Our next case of the afternoon is 413-0169 Decatur Manor Healthcare v. J.J. Swartz for the appellant, Mr. Tenney and Ms. Barish, and for the appellee, Mr. Tye, Ms. Chamberlain, and Mr. Eck. You may proceed. Thank you, Your Honor. May it please the court, counsel. We come to the court this afternoon with an odd bit of procedural history in this case, which first originates in Macon County, Illinois. It's a lawsuit by my client, Decatur Manor Healthcare, against Principal Defendant J.J. Swartz, a construction case over some work that was done at a facility owned by Decatur Manor. J.J. Swartz brought in Sherwin-Williams, represented by Ms. Chamberlain, and they brought in a lead floor cover, represented by Mr. Eck. The case was tried before the Honorable Judge Scott Diamond for a three-day bench trial, after which Judge Diamond, on the 16th day of August 2012, made a rather lengthy judgment order. Several pages, of course, it's included in the materials that you have. It's not the order that's being appealed from, but he made a written order with numerous specifically numbered paragraphs of findings based on the facts. Then he entered a judgment, largely adverse to Decatur Manor. Decatur Manor got none of the relief that it sought for. It wanted a money judgment. Decatur Manor did not get any of that. J.J. Swartz had a counterclaim against Decatur Manor. That counterclaim was, in large part, allowed, and then there was some setting off, if you will, almost of a contribution nature down the line for a part of the damages all the way down to relief. I provide that by way of just general history, although I don't know that any of those specifics of the judgment are all that important. So then, four days later, on the 20th day of August... Well, do you think the factual findings of the court are important for purposes of the issue before this court? No. Okay. I don't mean to be curt. No, no, not at all. I'd like for you to explain that. We like those kind of answers. No, when it's appropriate, your judgment works just fine, counsel. No need to apologize at all. No, that's not what I meant. So, four days later, Judge Diamond enters what he calls an amended judgment. And in so many words, he says, you know, it occurs to me that five or six years ago, I was represented in a Judicial Inquiry Board procedure by an attorney from the Henshaw Culbertson firm. Ms. Chamberlain is from the Henshaw Culbertson firm. So, Judge Diamond... Again, the exact words are in his amended judgment of the 20th, but he says, I should have recused myself. I should have got a... I should have asked for... I can't think of what it's called. Under Rule 63, either a waiver of any kind of conflict or... But I shouldn't have been the judge without this disclosure, without everybody's approval. I should not have tried this case. I'm effectively recusing myself after the fact, which is what he did. So, he vacates everything prior, which would include the August 16 order, including all of the findings of fact. Well, I thought you just answered curtly to my question, no, about whether his findings of fact were important. Now you're saying it seems to me that they are important. I don't think... That's why maybe a new judge couldn't adopt them. I don't think... I don't think... Well, whatever those findings of fact were, they're gone. As of August 20, they're gone, because he vacated them. There's nothing... Well, I guess my point would be, is if they're not gone, it would be significant if the new judge accepted them. If the new judge doesn't accept them, then maybe it's no big deal. I'm not really trying to give you a hard time here. I think what I'm suggesting to you is that his factual findings, if accepted by a new judge, would be pertinent from your client's standpoint. Important. Maybe pertinent's not the right word. Well, I guess... Of concern. I guess... But what I... My point is not so much what were those findings, were they correct, or whatever else you might ask yourself about those findings. Was it appropriate for Judge Little to reinstate them or to adopt them? Number one, this is sort of an alternative argument. He should... Judge Little should not be making findings based on the record alone, and we don't think that he did. We think what he did was go back and just say, well, Judge Diamond probably had things right, and so he reinstated those findings. But there's no authority in the law for that either, because these... The McMahon case that the defendants, the group of defendants have decided is a case where one judge made some findings of fact, then another judge, for no apparent reason, became assigned to the case, and that second judge entered a judgment on the basis of the findings that the first judge had made, which findings, of course, had not been disturbed or amended or anything in the meantime by the first judge. So in that instance, the second judge is acting entirely consistently with the first judge. So there is authority for that kind of action by a successor judge to adopt, if you will, or give effect to the findings of a first judge. But that's not all what happened here, because the ultimate ruling of Judge Diamond was that there are no findings. He vacated his August 16 order, so those findings disappeared, that judgment order disappears. Nobody has a judgment against anybody else. They're back to square one. He didn't say it, but implicitly, we're back to having a new trial. So then for Judge Little to come in and say, I'm going to adopt these findings and enter the same order that Judge Diamond did, is actually... Reversal may not be the right word, but it's akin to a reversal. He certainly overturned what Judge Diamond did. And the law, as we cite in our brief, is that once one judge makes a discretionary ruling, then another judge of concurrent or equivalent jurisdiction, and of course these were both trial court judges, does not have the capacity or the authority, I should say, to undo that. So Judge Diamond exercised his discretion when he said, I, in retrospect, I should not have been the judge. He did this well within the 30-day time period after his August 16 order was entered. So he's within the time to amend or modify his judgment. He makes it disappear, but now we have... We're back to square one, I suppose. And that was undoubtedly in discretionary determination or decision or action by Judge Diamond. And what Judge Little did was to reverse that discretionary order. And he'd simply... And I'll do respect to both judges here. It's trial court, but Judge Little did not have the authority to do that, by virtue of the cases that we cite in our brief, the three principal cases. One, Val Kunius, if I'm pronouncing that correctly, is the Supreme Court case from 1983 and a couple other appellate court cases that we cite. So in terms of the significance, and I do want to make sure Judge Turner, I understand your question about what I think about those particular findings. I don't think the specific findings themselves are important, because whatever they were, they've been vacated, and they disappear from the record. I mean, they're in the record in the sense that his original judgment is still a piece of paper that's been filed. But that's been superseded. It's gone. You know, we're back... The slate is clean. Nobody's got a judgment against anybody. And that was all in the exercise of a discretionary order by Judge Diamond. Judge Little did not have the authority to do what he did. If Judge Diamond had simply recused himself, wouldn't your argument still be the same? He recused himself, but he didn't vacate. He just recused himself. I recuse myself and refer the matter to the chief judge for such further proceedings as are necessary. Then it's assigned to a new judge. You would be asking that new judge for a trial. I assume... If he recused himself on the basis that... That he had doubt about his... Rule 63... Right, right. So he recuses himself... But he doesn't bother to vacate the judgment. He makes no reference to that. Or he says, I'm not going to enter final judgment. Or I'm referring to the case to the chief judge for whatever action and further proceedings as are necessary. If you were the chief judge, what would you do? So then that order becomes final if nothing happens after 30 days. And then one party would... I would think that we would appeal that. We would say, why did he... Why did you just go to the chief judge and say, are you going to give us a new... Let's have a new trial. And the chief judge would say, yeah, I'm going to assign it to Little. But he'll have to decide what to do with it. And you'd go in front of Little and say... We want a new trial. Because we want you to hear the witnesses. And that's what we told Judge Little. We want a new trial. We opposed the motion... For entry of judgment on the record. Whatever it was called. Whatever the motion that Judge Little ruled on... So as to reinstate, if you will, Judge Diamond's August 16th judgment. We opposed that and we said we wanted a new trial. And we're not here to say that we think Judge Diamond was biased or... It's not for us to say. I can't imagine myself saying that about him. But he said what he said. He said what he said. I've got self-doubt or however he phrased it. The court has self-doubt and the judgment... The court committed error and the judgment should not stand. That's what he said. That's what he wrote. And that's not the kind of judgment that Judge Little or anybody else ought to be in state. Thank you. No questions. Thank you. We'll hear from you in a little while. Who's first? Oh, Ms. Chamberlain. May it please the court, counsel, we've divided our time. I will have ten minutes and then counsel for each of the other defendants will have five minutes each. But I am available to answer any questions you have as to all the issues that are pending in the appeal. It is the position of the Sherwin-Williams Company that Judge Little, when he was appointed as the successor judge, had wide power to decide what had occurred in the case and what should occur in the case going forward. It's our position that the practical effect of Judge Diamond's August 20, 2012 order was to, in effect, grant Decatur Manor a new trial. Judge Little, when he was appointed the successor judge, had the opportunity to decide whether a new trial was warranted, whether it was justified based on the trial record, whether the trial record in and of itself was sufficient in order to just enter judgment. And we didn't ask in our motion that the trial court reinstate Judge Diamond's prior judgment. We asked that Judge Little, as a successor judge, review the trial record in its entirety and make his determination as to what the judgment should be. Because where Judge Diamond left the parties was having conducted a three-day trial, but having no order having been entered. And so we think that the law provided Judge Little with broad discretionary power to decide. What if instead of the particular circumstance that happened here, the defendant in this case, Decatur Health Care of Manor, lost that trial on appeal on the grounds of an evidentiary ruling of one kind or another that Judge Little made or Judge Diamond made? We agree with their appeal. Reverse the mandate for a new trial. And the case then comes before Judge Little. Judge Diamond recuses himself, retires, whatever. It's not before Judge Little. Could he do the same thing under those circumstances as he did here? Probably not, because I think there's a very important distinction there. In the proposition that you would suggest, you would have actually had some piece or ruling that was actually made by Judge Diamond during the course of the trial that Decatur Manor brought an issue with. In this case, Decatur Manor did not present you all with the trial record. They did not raise the... Well, why does it matter? In other words, this was a three-day trial, wasn't it? How many witnesses testified? How many witnesses? We had about 13, I believe. Only that exact number, but I believe it was about 13. Let's say it's 13. Let's assume the 13th witness testified to something that we deem improper or objection, and it was prejudicial, and we said this decision can't stand. Why couldn't Judge Little just go back and review the record of the other 12 witnesses and disregard the improper portion of the 13th witness's testimony and resolve it on that basis? I think he probably could. But I think that Decatur Manor would have a stronger argument in that context because they'd be pointing to some actual question or ruling or comment or behavior on the part of Judge Diamond that would have suggested... You know, I'd like to use the line about how judges, including even appellate court judges, are fungible.  That is, just as in marital cases, for instance, experienced, sound trial judges looking upon the same testimony presented. One judge could decide that parent A is going to be the custodial parent and another judge might decide parent B. Similarly, there might be differences in dividing up property. The same thing, it seems to me, when talking about prior as a fact, might apply on whom to believe and what to believe. If these were more difficult facts. In the present case, we have facts where... If they're difficult facts. Right. In this case, we had the plaintiff presented two diametrically opposed experts, one who said 100% of this floor had to be redone, the other said 5% of the floor had to be redone. One had a direct pecuniary interest in the outcome, in that he was paid almost $200,000 to fix the floor. The other was brought in independently to opine on what part was damaged. The plaintiff presented two experts that were completely and diametrically opposed in their decisions, and one was paid $200,000 to fix the problem and one was independent. So it's not where the factual circumstances were difficult, and they were Decatur Manor's own witnesses. Was there a motion for summary judgment made in these cases? That came out during the course of trial, so there was not before, and we had an odd circumstance in that... I'm trying to understand what the rule would be that would provide that only if there are factually involved cases would the appellant, for instance in this case, be entitled to a new prior effect. I'm not sure how I could describe that. Well, I think it goes into the discretionary power of a trial judge to decide to look at the record as a whole and to look at the posture of the case, and that's why trial judges are given broad discretionary powers to determine whether or not a new trial is warranted. And I believe that when Judge Little... A new trial is warranted versus I'll just look at this record and decide it based on that? Correct. Versus. And what we think, we believe Judge Little took a look at it and decided whether Judge Diamond's August 20th order was actually entered in error. He looked at the order and was there any impartiality shown? Judge Diamond did not say he was impartial. Is that a call that Judge Little can make? I believe it's a call that the law allows him to make. I think that he's allowed to take... He can look at any interlocutory order that's entered up into that point and decide if there was a basis for Judge Diamond to enter that order. And I think he took a look at the record, and if you look at how tenuous the suggestion is between impartiality, the representation of someone in our firm, not myself, almost six years ago, you know... It would be a lack of impartiality. Lack of impartiality. Correct. And it's an objective standard. I think anyone could look at that objectively and say, no judge who was represented by another lawyer in another office six years ago could... Judge Diamond did not say he had a lack of partiality. He said he worried that his impartiality might reasonably be questioned. He didn't say I was impartial. He said, I'm worried someone else might think my partiality could be questioned. And I think Judge Little can look at that from an objective standpoint and decide, no, no reasonable person could say that tenuous of a relationship with that firm... Except for the judge who said it. But he made a finding of fact by saying, I should not have heard this case. I should have done one of two things. I should have recused myself, or I should have been transparent at the outset, assuming that I would have remembered. I have so many GIB complaints that I don't remember who represented me. I don't think that's the case with Judge Diamond. But that's what he said. How do you go behind that? The simple fact is that he presided over the case for almost a year. He sat through the entire trial. He issued his entire order, and then he made the connection. Wait, pardon me. He made the connection four days before he issued his order. So he made the connection with that firm, and then still didn't have a problem with it, then writes his detailed 38-paragraph factual finding order, then four days later decides. So it's not like he felt so impartial that he still didn't... Pardon me. But how do you go behind his finding that his participation could legitimately be called into question? He had self-doubt, and that self-doubt may have referred to self-doubt about, why didn't I do this? Why didn't I catch on to this quicker and do something about it? Or my lack of bias or lack of impartiality could be questioned by either side. This needs to stop now, and I vacated the judge. Well, the trial record includes... I'll let you answer. The trial court includes rulings. It doesn't matter whether it looks like those were controversial. There are a lot of objections that are sustained or overruled during trial that probably don't even matter. At least trial judges often think that way, whether counsel do or not. But they were made. You get around that, Judge, by looking at it from an objective standpoint, which is what we believe Judge Little did. And you look at it and say, I understand that Judge Diamond might have, four days after he issued his order, gotten nervous about the order he issued. But you look at it objectively and say, did he really have a reasonable basis to think that his impartiality could have been questioned? And the answer is no. Look, counsel, here's my problem. You've mentioned about interlocutory orders, and that's true. But that's on rulings of law. For instance, in a criminal case, do you think had there been a preliminary matter where the trial judge had made findings of fact as to some question about some preliminary matter in a criminal case and then hit by a bus and dead or was transferred out, that findings of fact can be reviewed by the subsequent judge who hears the case? Or are we talking about orders like granting a motion for summary judgment or denying a motion for a motion to dismiss? These are legal rulings. I'm not aware of any case that stands for the proposition that a decision based upon a factual determination, like I should be recused, is an interlocutory order that's subject to review. I think it would be most akin to an order granting a new trial. I think that would be most akin to it. That's a legal decision. Right. A decision that I shouldn't have heard this case and I should be recused is a personal one. As a matter of fact, if the judge said I'm going to recuse myself, you couldn't have appealed that or challenged it, could you? I don't believe so, no. Because recusals are personal and final, aren't they? But I don't think his recusal, I disagree with counsel, but I don't think his recusal undid the 38 paragraphs of factual findings. It doesn't change the trial record. The trial record itself, the witness testimony, remains unchanged, and those facts are the facts that carried with it to the successor court. Thank you, Kim. Thank you. Ty? Your Honor, I'm Tim Ty. I represent J.J. Swartz. The first point I'd like to make is that there isn't anything in the record that I think suggests that all the parties got anything but a full and fair trial in the marriage. What happened with Judge Diamond was unfortunate. I would echo Ms. Chamberlain's sentiments that his decision that he should have recused himself is simply wrong. As we've all put in our briefs, this seems to be unprecedented. We can't really find a case where this kind of thing is happening. If he had said, I think I'm going to have to recuse myself, could you have challenged it? Had he said at trial, no, we couldn't have. Then how could it be wrong? Well, his basis for it wasn't objective. He doesn't even have to give a basis, does he? Well, to wait until after the trial's already over and then do it, I think is prejudicial and it's an abuse of his discretion to do something like that. And this hasn't happened before that any of us can find. So I don't think there's any precedent that says once he gets through the trial, he can just undo it for no reason and make everybody do it again. I would submit that that's not. The way I would look at it is if, since this has never happened, spin it around to things that have happened. There have been cases where people have, after the fact, come in and said, you shouldn't have heard that, I want my new trial. Had that happened in this case, I don't, there wouldn't have been any basis to force his recuse, he won't get a new trial. The ultimate question is, should there be a new trial? Did Keterman get a fair trial? On this record, they did. They're not challenged, they haven't appealed any of that. Why didn't they have a new hearing in front of a new trial? Well, they've already had it. Well, that was all set aside by a judge who said he shouldn't have been hearing this case. Well, I would submit to your honors that while he vacated his judgment, he didn't vacate the findings of fact that he made. No? It would be as if he made the findings of fact, didn't get around to making the judgment, then got hit by the bus or something, and then another judge under precedent could come in and look at the factual findings, make a judgment based on those previous factual findings. Well, but there's no case where the judge who made those findings set them aside. There's no case like this at all? Well, so it's the idea that it's all there, and he made his findings, and we're just now essentially having a second judge act as a scrivener. That's rather different. It is different, but ultimately the question is... Judge Little decided, for instance, that he wanted to have a full trial in this case, and he came up with a decision contrary to Judge Diamond's, because you've appealed on the grounds that Judge Diamond was right and Little was wrong. I don't have any idea. Well, I have a pretty good idea. The answer is no, counsel. You couldn't have, because we don't even care what the earlier trier fact had said. It's the second trier fact whose decision would govern. Well, and that's right, but we've had one trier fact, and those factual determinations I think are still there. The question is, do they deserve a fair trial? And I would submit they don't, because they got a full and fair trial in America. That's what I have. You've got a few more minutes if you want them. It's not written. Not that I want to give you a lot of extra time, but it occurs to me that none of the three of us misunderstand that this is farcical or very, very poor for the administration of justice. But at the same time, you're making all the practical arguments. Wouldn't it be better for everybody to not spend any more money on this case and to go away and rely upon what we have available to us? But I don't understand how you do that when somebody asks for a trial and they expect to have it before a fact finder, and then that fact finder abdicates. It seems like you have to go before a new fact finder. It seems like it. It's unfortunate that this has happened. Yes, agreed. Nobody wants to speak poorly of Judge Diamond, but I don't think he had any basis for doing what he did. I think he made a mistake, and I think that it would compound the mistake. It does, but except that mistake, if it's a mistake, is not reviewable. So the question is, what do you do after that? And then you start parsing what's fair versus what does a record mean. I've certainly had cases where an expert irritated the hell out of me, and that may have colored how I viewed their testimony. I'll be honest about that as a trial judge. It surely didn't color what Judge Little thought, because he didn't see or hear that witness. He read the cold record, which we're left with often, and we're told, don't be making those factual distinctions and saying you would have ruled another way. You have to find a reason to rule another way, a legal reason. Here he's ruling the same way, but he's not doing it based upon the same viewing of the witnesses and assessing their credibility. That's correct, he's not. But I think there's precedent that's close enough to this where because Judge Diamond did make findings of fact, and the ultimate ruling was consistent and not against the manifesto of the evidence, that it can stand. Thank you very much. Mr. Eck? Please support counsel, Brian Eck, on behalf of the Leak Floor Covering LLC, the third-party defendant, to the third-party defendant. We suggest we are not inappropriate in this action simply because no one's filed a cross-notice of appeal as to the portion of the judgment entered on February 13th which relates to leak floor covering. Briefly, Elite filed a motion to reconsider Judge Little's judgment to correct a mistake in the judgment, which was a credit should have been applied upward as opposed to downward. The original judgment stated that there was a $15,000 liability as to Elite, which flowed downhill through Sherwin Williams and was charged against J.J. Forbes. So the original order said rather than get your $63,000 out of a plaintiff, you take $15,000 off of that and get it from Sherwin Williams, who then gets it from Elite. The record showed in Judge Little's brief that Elite provided at the co-defendant's request payments to reimburse Sherwin Williams for work that had been done to modify or repair some of the edges of the corridors in this case. It's called a quarter round. It's a thick base along the floor that masks the edges. It's undisputed in the record that those payments were made, and we suggest that the court lacks jurisdiction as to those segments of the judgment which affect us. As far as our relationship is concerned with Sherwin Williams, no one's contesting that we're fully and finally discharged, and whatever judgment should be brought under our separate contract has been discharged. Now, I understand that this is far out in orbit, Your Honor, in terms of procedural matters. However, the plaintiff and J.J. Schwartz have an agreement, and J.J. Schwartz and Sherwin Williams have an agreement, and Sherwin Williams and Elite have an agreement. Each of those agreements are different. They create different rights, and they arise differently. You think you've done what you're supposed to, and you shouldn't have to be here, but you wanted to come to make sure that we knew that you didn't need to be here. That is precisely correct. We're very perceptive. Thank you. Any further? None, Your Honor. As we've set forth in the motion at length, when a judgment is partially against a party, they're required to file a cross-notice of appeal. If they fail to do so, any argument as to any part of that judgment which is adverse is waived. Thank you. Rebuttal? Thank you. Once again, may it please the Court, Counsel, there has been some discussion by the defendants, third-party defendants, in this argument about precedent and the powers or the authorities that Judge Little had. We suggest that there's not been any precedent for what Judge Little did. The precedent that applies is the precedent that we cited with respect to the lack of authority of a successor judge of concurrent jurisdiction to reverse or modify a discretionary termination made by Judge Diamond. There's also been some discussion about whether Judge Diamond should have done what he did or not. Did Judge Diamond make the wrong decision? I think the Court addressed that in some of the questioning. My point is, and this may sound familiar because I think it's what one of you justices said, but how could that be any more personal a decision? Who's going to tell Judge Diamond what his state of mind is? Relatedly, it would be a violation of due process if Judge Little really did. I mean, Judge Little could have taken the August 16 order and torn it up the day he got this file. And then he could have spent days and days studying the transcript of the trial and the records, the pleadings and the evidence and everything else and made a determination. But he would not have heard any of the witnesses. That is clearly a violation of due process. And whether Judge Diamond made a mistake, I've heard it said, you know, there's very few bad situations or very few mistakes that can't be made worse. And maybe there's some application here. I think Judge Diamond, I would imagine that he feels kind of bad about the posture of this case. But we applaud him because, you know, he knows there's going to, you know, he would have to expect that by reason of his August 20 ruling, there's going to be a new trial. And he knows the party spent thousands of dollars and all kinds of time trying this case for three days. He knows that's the likely result of what he does on August 20. But he likes that better than having an unclean record, having the potential appearance of impropriety. And if we have to try this case again, we try this case again. That's better than anybody looking at this and saying the judicial system didn't work, or somebody didn't get a fair trial. And he's already told us the court committed an error. The judgment should not stand. It shouldn't stand whether he signs it or whether Judge Lewis. Thank you, counsel. Ms. Chamberlain, do you have any dispute or disagreement with what Mr. Eck said about, in a way, delete is not part of this process anymore? You don't need to argue it, just yes or no. No, Judge. No dispute? No. Okay. And Mr. Todd? Well, Your Honor, to the extent you tried to dismiss my notion of steal, I object to that. I frankly didn't quite understand what we were talking about. Okay. I'm not asking for anything more. And you've got no skin in that game, I take it. Correct. Very good. Thank you. We'll take the matter under advisory.